Opinion filed May 29, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00129-CV

_____

## LISA PLUNKETT ET AL., Appellants

## V.

## CONNECTICUT GENERAL LIFE INSURANCE COMPANY AND SOUTH CENTRAL RS, INC., Appellees

### On Appeal from the 68th District Court

### Dallas County, Texas

### Trial Court Cause No. 02-1176-C

## MEMORANDUM OPINION

Appellants are former residents (the Residents) of Saratoga Springs Apartments, a multi-unit apartment complex in Dallas that was closed due to mold contamination. The Residents sued Connecticut General Life Insurance Company

(the owner), South Central RS, Inc. (the manager), and others, alleging (1) property losses and personal injuries due to the toxic mold contamination and (2) conversion of the Residents' property. In *Plunkett v. Connecticut General Life Insurance Co.*, 285 S.W.3d 106 (Tex. App.—Dallas 2009, pet. denied), the court of appeals affirmed the trial court's grant of summary judgment in favor of the defendants on the Residents' claims for property damage and personal injury. The court of appeals remanded the conversion claims to the trial court. *Plunkett*, 285 S.W.3d at 122.

The trial court subsequently granted some of the defendants' motions for summary judgment on the Residents' conversion and non-conversion claims and, thereafter, granted the parties' joint motion and dismissed all remaining claims. The Residents filed this appeal against Connecticut General Life Insurance Company and South Central RS, Inc. (Appellees), who were the only defendants named in the last petition filed by the Residents.[1] We affirm.

*Issues Presented*

In their first issue, the Residents argue that the trial court erred in dismissing and limiting their claims that Appellees made negligent misrepresentations that caused the Residents to discard or abandon their possessions that were in the apartments. In their second issue, the Residents argue that the trial court erred in dismissing their claims of "conversion by fear/apprehension": claims in which the Residents asserted that Appellees' acts and misrepresentations with respect to the conditions at the apartment complex caused the Residents to dispose of or abandon their possessions.

---

[1]We note that this case was transferred to us from the Fifth Court of Appeals in Dallas pursuant to an order of the Texas Supreme Court under the authority of Section 73.001 of the Texas Government Code. TEX. GOV'T CODE ANN. § 73.001 (West 2013).

*Background Facts*

Appellees have not disputed the presence of mold contamination at the apartment complex. At issue in *Plunkett* was whether the Residents had defeated summary judgment by producing sufficient evidence to show (1) the existence of contamination of and damage to the Residents' personal property and (2) any property damage and health complaints caused by exposure to the mold at the complex. The parties also disputed whether the trial court's summary judgment properly encompassed the Residents' conversion claims and disposed of them. *Plunkett*, 285 S.W.3d at 111.

The Dallas court affirmed the trial court's summary judgment for Appellees (and the other defendants) principally on the ground that the testimony of the Residents' experts did not meet the reliability standards for scientific and medical evidence; therefore, the Residents had not presented sufficient evidence to defeat the summary judgment. But the Dallas court agreed with the Residents that the motions for summary judgment did not encompass and dispose of the Residents' conversion claims. The court pointed out that "[t]here is a material difference between 'property taken' and 'property damaged.'" *Id.* at 122 (quoting *Nortex Oil & Gas Corp. v. Harbor Ins. Co.*, 456 S.W.2d 489, 493 (Tex. Civ. App.—Dallas 1970, no writ)). "A summary judgment motion on 'property damage' claims is substantively different from one specifying conversion as its subject." *Id.*

After the case was remanded to the trial court, the Residents filed a thirteenth amended petition in which they reasserted their prior conventional conversion claims and added claims for "conversion by fear," seeking recovery for items that they had abandoned, destroyed, or discarded due to the fear of contamination that Appellees had created by Appellees' handling of the situation. Appellees moved for summary judgment on the Residents' claims for "conversion by fear," asserting six grounds

for summary judgment. In response, the Residents filed a fourteenth amended petition, asserting the claims for "conversion by fear" and adding new claims that the Residents had abandoned or discarded their personal property due to "negligent misrepresentations" by Appellees. At the same time, the Residents moved for a continuance, requesting more time for discovery because their earlier discovery "did not focus on claims of conversion or property interference."

After a hearing in August 2012, the trial court granted summary judgment in favor of Appellees on the Residents' claims for "conversion by fear" without specifying the grounds. But the trial court did not rule on the Residents' motion for continuance.

The Residents then filed their fifteenth and sixteenth amended petitions. These petitions contained the Residents' "conversion by fear" claims (on which the trial court had granted summary judgment) and their claims that they had chosen to abandon or discard personal property in reliance on alleged "negligent misrepresentations" by Appellees. The only defendants named in the sixteenth amended petition were Appellees.

Appellees then filed a motion for partial summary judgment on the grounds that (1) the Residents could not recover on their negligent misrepresentation claims as a matter of law and (2) the Residents had no evidence to support the elements of negligent misrepresentation. With their response to Appellees' motion, the Residents also included a second motion for continuance, arguing that they had not had time for discovery related to their negligent misrepresentation claims.

In October 2012, the trial court granted Appellees' motion for summary judgment on the Residents' claims for negligent misrepresentation that are at issue in this appeal. Again, the trial court did not rule on the Residents' motion for continuance. The trial court did not grant summary judgment to Appellees on the

Residents' claims for negligent misrepresentation to the extent that the Residents sought unreimbursed cleaning expenses incurred prior to May 10, 2010. Subsequently, the parties settled the claims for unreimbursed cleaning expenses incurred prior to May 10, 2010, and all other claims on which summary judgment had not been granted. The Residents' appeal concerns the trial court's summary judgments on their claims for negligent misrepresentation (including damages for unreimbursed cleaning expenses after May 10, 2010) and their claims for "conversion by fear."

Before addressing whether the trial court erred in granting the summary judgments in favor of Appellees, we will first address the Residents' argument that the trial court should have granted their motions for continuance to allow them to conduct further discovery.

*Residents' Motions for Continuance*

The record does not show that the trial court denied the Residents' motions for continuance or refused to rule on the motions, or that the Residents objected to that lack of action by the trial court. Appellees argue that the Residents have not preserved this issue for appellate review. *Bryant v. Jeter*, 341 S.W.3d 447, 451 (Tex. App.—Dallas 2011, no pet.). Because the Residents contend that the trial court's summary judgments were in effect a denial of their motions, we will discuss the reasons why we cannot find that the trial court abused its discretion in refusing to grant their motions for continuance. We review the denial of a motion for continuance under an abuse of discretion standard. *Miller v. Prosperity Bank, N.A.*, 239 S.W.3d 440, 442 (Tex. App.—Dallas 2007, no pet.); *Crooks v. Moses*, 138 S.W.3d 629, 634 (Tex. App.—Dallas 2004, no pet.).

The Residents state that the remanded case was not reinstated on the trial court's docket until May 17, 2012, and that they amended their petition in June and

August to clarify existing claims and add the following new claims: (1) conversion and negligent bailment relating to certain Residents' property items left at the apartment complex; (2) negligent misrepresentations that caused the Residents to dispose of or abandon their personal property; and (3) conversion of their property by fear/apprehension. The conversion and negligent bailment claim was settled in November 2012 and is not a subject of this appeal.

Emphasizing the short time frame between the reinstatement on the court's docket in May and the thirteenth and fourteenth amended petitions that were filed in June and August 2012, the Residents argue that they did not have an adequate time for discovery related to their new claims. A review of the record, however, reflects that the Residents have had ample opportunity for discovery in this case. Lisa Plunkett began the suit in Harris County in 2000; by the end of March 2002, there were one hundred and thirty-four Residents who had joined in her suit. The case was subsequently transferred to Dallas County in November 2002. By the end of 2002, most of the Residents had joined the suit against Appellees.

In the Residents' verified motion for continuance that was filed on October 12, 2012, and in the affidavit of their attorney, the Residents and their attorney stated that the additional information needed was:

(a) further individual statements about the items of personal property and/or household goods that each individual plaintiff discarded and/or abandoned,

(b) the statements from the Appellees that were heard or read by the individual Residents,

(c) the value of the Residents' items at the time they were disposed of and/or abandoned, and

(d) the replacement value of same.

The Residents have not explained why this information was not obtained at some point during the long period of this litigation. Neither the motion for continuance nor the counsel's affidavit demonstrated that the Residents used due diligence to procure the evidence sought as required by TEX. R. CIV. P. 252. It does not appear that the Residents needed any discovery from Appellees. In 2009, the Dallas Court of Appeals observed, in its opinion, under the heading "**Conversion Claimants**":

> Residents generally alleged appellees are liable for conversion of some property items left behind at the apartment complex when vacating the premises. The petition did not identify which residents claimed conversion or what items they claim had been converted, and there is no evidence of declarations or disclosures filed by any resident detailing these claims.

*Plunkett*, 285 S.W.3d at 121. That was a clear indication to the Residents in 2009 concerning the evidence they needed.

In their brief, the Residents admit that conversion claims had long been a part of their pleadings. In the Residents' fifth amended petition filed in 2003, they alleged that their property had been "lost, destroyed or appropriated." In their "new" claims of "negligent misrepresentation," the Residents claimed that they chose to abandon or discard their personal property in reliance on alleged misrepresentations by Appellees. But, in substance, the "negligent misrepresentation" claims are similar to their earlier allegations.

The Residents, in their original petition, asserted that Appellees were negligent in their handling of the mold issue and that "the explicit representations made by Defendants . . . conceal[ed] from Plaintiff the Defendants' knowledge of the contamination and their wrongful actions." The original petition asserted damages for the replacement value of the Residents' property. Looking at the numerous amended petitions, one would assume that counsel for the Residents

would have thoroughly investigated all representations made by Appellees to his clients and the effect of Appellees' representations upon his clients.

As the court observed in *Restaurant Teams International, Inc. v. MG Securities Corp.*, 95 S.W.3d 336, 340 (Tex. App.—Dallas 2002, no pet.), a plaintiff is "presumed to have investigated [the] case before filing suit." Certainly, this investigation should have been done sometime before 2012. The Residents failed to provide any evidence to show that they used due diligence to timely obtain the evidence they sought. *See* TEX. R. CIV. P. 252; *Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

The Residents' contention that the trial court erred in failing to grant their motions for continuance is overruled.

*Standard of Review*

The appellate standard of review for traditional summary judgments is well-settled. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The summary judgment movant bears the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). A defendant is entitled to summary judgment if it disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all the elements of an affirmative defense. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Once the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

A no-evidence summary judgment is properly granted if, after adequate time for discovery, the movant asserts that there is no evidence supporting one or more

specified elements of a claim or defense on which the nonmovant bears the burden of proof at trial, and the nonmovant then produces no summary judgment evidence raising a genuine issue of material fact on those elements. TEX. R. CIV. P. 166a(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). In *Plunkett*, the Dallas Court of Appeals reviewed in detail the standards of review for both traditional summary judgments and no-evidence summary judgments. *Plunkett*, 285 S.W.3d at 111–12. We refer the parties to that thorough explanation.

Because the Residents have stated that their negligent misrepresentation claims are "the heart of this appeal," we will first deal with the summary judgment on that claim. Although not labeled, Appellees' motion appears to have been a no-evidence motion for summary judgment.

*The Residents' Negligent Misrepresentation Claims*

Both parties refer to *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991), for the four elements of a claim of negligent misrepresentation: (1) the defendant made a representation in the course of his business or in a transaction in which he has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on defendant's representation. Appellees argued in their motion that the Residents had no evidence on elements two, three, and four.

The trial court did not specify the grounds for the summary judgment granted to Appellees against the Residents' negligent misrepresentation claims. When the trial court does not specify the basis for its summary judgment, we must affirm the summary judgment on any meritorious ground raised in the motion. *FM Props.*

*Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000); *Plunkett*, 285 S.W.3d at 112.

In their brief, the Residents quote at length from their fourteenth amended petition, stating that the quoted portion shows the factual basis for their negligent misrepresentation claims. A plaintiff's petition is not summary judgment evidence. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Clear Creek Basin Auth.*, 589 S.W.2d at 678. The Residents point to evidence provided by Jeannie (Sullivan) Fischer. But, as Appellees point out, Fischer is not a party to this appeal; she settled her claims. The Residents have not pointed to any evidence that shows that Appellees provided information to the Residents that was false or that Appellees were negligent or failed to exercise reasonable care when communicating with the Residents. Nor have the Residents provided factual evidence that a Resident suffered a pecuniary loss as a result of relying on a claimed misrepresentation. They have only provided general conclusory statements that some Residents suffered losses because of the claimed misrepresentations.

The only summary judgment evidence that the Residents submitted consisted of the Residents' and Fischer's answers to interrogatories; these answers fell short of raising a genuine issue of material fact. The Residents referred to the "substance" of the alleged misrepresentations but could not state the exact dates they were made. They also attached a number of letters or documents that Appellees issued. We have read the communications that were issued by Saratoga Springs Apartments as events unfolded and the claimed misrepresentations mentioned in the interrogatory answers. But we have found no summary judgment evidence indicating that any statements were false or were made negligently.

The principal difficulty the Residents face in this appeal is the lack of evidence to show that Appellees were negligent when they communicated with the Residents.

10

The Residents asserted that they chose to abandon or discard their personal property in reliance on alleged misrepresentations by Appellees. But the Residents failed to produce evidence that any representation made by Appellees was false or negligently made at the time the statement was made. The Residents have failed to point out any evidence of expert testing to support the Residents' assertions that Appellees made negligent misrepresentations about the mold. We have only the Residents' conclusory statement that Appellees "made many false representations."

The Residents' first issue is overruled.

*The Residents' Conversion-By-Fear Claims*

After the *Plunkett* decision in 2009, the Residents filed a thirteenth amended petition that asserted a variation of their conversion claim that they termed "conversion by fear." They claimed that the conversion occurred when the Residents abandoned, destroyed, or discarded their property out of fear of the mold.

Appellees filed a traditional motion for summary judgment on the Residents' conversion-by-fear claims. Appellees asserted six grounds in their motion. The trial court granted summary judgment against the Residents on their claims for "conversion by fear" without specifying the grounds. The Residents have only addressed one ground of the traditional summary judgment.

The six grounds in Appellees' motion for summary judgment were (1) that the Residents' claim failed because the Residents had admitted in their pleadings that they had retained possession of their property and had chosen "to abandon, destroy or discard" their property; (2) that a claim of conversion by fear is not actionable because the Texas Supreme Court has rejected claims for damages arising out of fear of injury where no such injury has actually occurred, *Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 89–91 (Tex. 1999); (3) that the Residents admitted by pleading that Appellees did not take property away from the

11

Residents and, thus, there was no conversion of the property; (4) that there was no evidence that Appellees had intentionally asserted a right in the property as required by Texas law of conversion; (5) that there was no evidence that the Residents made a demand for the return of their property and that Appellees refused to return the property (to the contrary, the Residents judicially admitted that the property was in their possession until they discarded or abandoned their property due to their "fear"); and (6) that Appellees conclusively established their affirmative defense of "abandonment" based on the Residents' judicial admissions.

The Residents begin their argument by stating they adequately pleaded that Appellees' actions amounted to "active interference with [their] right of property and/or control as to deprive [them] of their free use and enjoyment" of the property. Based on this statement, the Residents then assert that the tort of conversion under Texas law is sufficiently broad to encompass their claims of "conversion by fear." We disagree.

Conversion is the unauthorized and wrongful dominion and control over personal property of the owner to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971); *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 758–59 (Tex. App.—Dallas 2008, no pet.). The elements of a conversion claim are (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied); *Khorshid*, 257 S.W.3d at 759.

The Residents' conversion-by-fear claims are not consistent with the well-settled elements of conversion. The Residents' claim is not that Appellees assumed and exercised control over the Residents' property to the exclusion of, or inconsistent with, their rights as owner. The Residents' claim is that their fear of mold contamination led them to dispose of their property or abandon their property. The Residents respond that the "gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property which he is entitled to possess. *Ligon v. E. F. Hutton & Co.*, 428 S.W.2d 434 (Tex. Civ. App.—Dallas [1968], writ ref'd n.r.e.)." But there is no evidence that Appellees intended to assert control over the Residents' property or that they wrongfully deprived the Residents of their property. The Residents chose to dispose of or abandon their property.

There also is no evidence that the Residents demanded the return of the property and that Appellees refused to return the property. To the contrary, the Residents admit that they simply left their property in the apartments or abandoned their property due to their fear of mold contamination. In effect, the conversion-by-fear theory is inconsistent with the second, third, and fourth elements of a conversion claim.

As stated earlier, where the summary judgment order does not specify the grounds for the summary judgment, an appellate court will affirm the summary judgment if any one of the grounds in the motion is meritorious. It was the Residents' burden to show that each of the grounds asserted in the motion were insufficient to support the trial court's judgment. *See Jones v. Hyman*, 107 S.W.3d 830, 832 (Tex. App.—Dallas 2003, no pet.). Several of the grounds appear to have merit. For example, the Residents did not address Appellees' ground that the Residents judicially admitted in their pleadings that they had chosen to abandon or

dispose of their property.  Nor did the Residents challenge Appellees' ground that there was no evidence that Appellees intentionally asserted a right in the Residents' property.

The Residents' second issue is overruled.

*This Court's Ruling*

The orders at issue in this appeal are affirmed.

TERRY McCALL

JUSTICE

May 29, 2015

Panel consists of: Wright, C.J.,
Willson, J., and McCall.[2]

Bailey, J., not participating.

---

[2]Terry McCall, Retired Justice, Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.