In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00146-CV
_____

**TAYLOR LASTOR, Appellant**

**V.**

**JOHN LIONEL JACKSON, Appellee**

**On Appeal from the County Court at Law**
**Liberty County, Texas**
**Trial Cause No. CAL-12517**

**MEMORANDUM OPINION**

Taylor Lastor appeals the trial court's judgment which found in favor of John Lionel Jackson, assessed damages in the amount of $6500, and ordered Lastor to turn over the engine that Jackson had taken to Lastor to be rebuilt. We reverse the trial court's judgment and render judgment that Jackson take nothing from Lastor.

BACKGROUND

In a petition entitled "Original Petition for Damages Due to Breach [of] Contract[,]" Jackson filed suit against "Taylor Lastor d/b/a TRE Racing[.]"

1

According to Jackson's petition, on November 2, 2015, he delivered to Lastor an engine to be rebuilt. Jackson pleaded that he paid the full price of $2000 to Lastor. Jackson further pleaded that on or about February 25, 2016, Lastor advised him "that his entire shop was destroyed by fire, which included [Jackson's] engine." In addition, Jackson pleaded that Lastor assured him "that he would be compensated for his loss[,]" and that on June 22, 2016, he "contacted defendant Lastor without success."

Lastor initially filed a *pro se* letter in response to Jackson's petition. In the letter, Lastor asserted that Jackson's engine had been disassembled before the fire, and Jackson had been informed that the engine was unusable and severely damaged. Lastor's letter also stated that the engine was not lost in the fire, and "the parts and pieces are here." According to Lastor's letter, once the new shop was up and running, he tried to contact Jackson, but the "[o]nly return call we got was from his attorney demanding a check for the engine[.]" Attached to Lastor's letter was a sales receipt, dated November 3, 2015, showing the transaction with Jackson, which showed the cost of the rebuilding and also reflected Jackson's $2000 deposit. Lastor subsequently obtained an attorney, who filed a formal, verified answer on Lastor's behalf. In the answer, Lastor asserted a general denial and claimed that Jackson's cause of action was based on the rendition of a professional service, which is

2

exempted from the application of the Texas Deceptive Trade Practices Act. Lastor also pleaded that he is not liable in the capacity in which he was sued, "as provided by Rule 93 of the Texas Rules of Civil Procedure[,]" and denied that he conducted business under an assumed or trade name.

The case proceeded to trial with Jackson acting *pro se* and Lastor represented by counsel. Lastor was not present at trial. The trial began with the trial judge asking Jackson, "Tell me what this case is about? What are you doing?" Throughout the proceeding, Jackson and Lastor's attorney simply responded to the trial court's questions, and sometimes to each other's statements, and no witnesses were sworn. In response to the trial judge's first question, Jackson stated that he took a race engine to TRE Racing Engines on November 3, 2015. According to Jackson, Lastor told him that the rebuilding would only take about thirty days, but it took much longer, and Jackson explained that he had paid a $2000 deposit. Jackson stated that on February 25, 2016, a fire occurred at the shop, and his engine was destroyed. According to Jackson, he had therefore lost $2000 plus the value of his engine.

Lastor's counsel stated to the trial court that Lastor had asserted an affirmative defense, *i.e.*, that Lastor is not liable in the capacity in which he had been sued. Lastor's counsel stated, "This is . . . TRE, Inc. This is Tarkington Racing Engines, Inc. It's a corporation and he's only sued Mr. Lastor in his personal capacity."

3

Lastor's counsel stated that TRE is not a d/b/a, and Jackson responded, "Well, I guess, he was doing business as TRE, I'm guessing." Lastor's counsel stated that Jackson had sued Lastor "individually and not in the corporate capacity[,] and he's not liable in the individual capacity."

The trial judge, apparently operating under the inaccurate assumption that the capacity issue had been raised as a special exception rather than an affirmative defense, stated, "No, that's denied." Lastor's counsel attempted to clarify that Lastor's defense that he was not individually liable was not raised in a special exception, but the trial judge interrupted and asked Jackson, "What are you asking for?" According to Jackson, the engine is worth $19,000, and he had to purchase another engine, which cost $15,000, and he stated, "I just want to be reimbursed for my property." Jackson said that he "never got anything back from [Lastor]."

Lastor's counsel stated, "We have the sworn pleading, Your Honor, and that's where we are[,]" and he stated that he was relying on that pleading. Lastor's counsel then requested a continuance until Lastor could appear before the trial court. Lastor's counsel stated, "we must respectfully request a motion for continuance, Judge, because we can't proceed without Mr. Lastor here." Lastor's counsel stated that he was unable to reach Lastor by phone, and he did not know "where he is or what's happened, but . . . we have to have his testimony regarding the destruction of the

4

engine and the value of the engine . . . ." The trial judge again asked Jackson what he was requesting, and Jackson stated that he sought $19,000 to replace the engine. The trial judge then stated, "I'm going to render judgment for the plaintiff for $15,000. Do you want your engine back[,] too?" Jackson responded, "No, sir." The trial judge said to defense counsel, ". . . if I missed it too much and there's something you really need to say, you can file a motion for a new trial[.]" Before the trial judge signed a written judgment, Lastor filed a motion for new trial, in which he asked the trial judge to review the trial record, find that an injustice had been perpetrated on him, and grant him a new trial. In the affidavit, Lastor averred that Jackson "brought parts of an engine for me to tear down and see if it was repairable." According to Lastor, Jackson's "parts were not repairable" and Jackson only delivered "parts which could not be used[]" rather than an engine. The trial judge signed an order granting Lastor's motion for new trial.

On the same date, the trial judge swore in both Jackson and Lastor. After being sworn in, Jackson testified that he took a complete engine to Lastor. According to Jackson, he gave Lastor a deposit of $2000. Lastor testified that he runs an incorporated racing engine business known as TRE, Inc., which stands for Tarkington Race Engines. Lastor explained that TRE, Inc. has been incorporated since approximately 2009. According to Lastor, Jackson brought a portion of a 572

big block Chevrolet engine for inspection. Lastor explained that he tore down the engine, but the engine did not have carburetors, fuel injection, ignition system, or electrical components on it, so it was a "long block." At the end of the new trial, the judge stated that he had previously found in favor of Jackson as to liability and had granted a new trial only as to damages.

After the new trial, the trial judge signed a judgment, in which he rendered judgment in favor of Jackson "against Defendant Taylor Lastor d/b/a TRE Racing" for damages in the amount of $6500 and ordered Lastor to turn over the engine to Jackson. Lastor filed a second motion for new trial, in which he again asserted that an injustice had been perpetrated on him, and Lastor attached an affidavit that restated his contention regarding Jackson's parts not being repairable, indicated that Jackson's parts "are available for his pickup anytime he makes reasonable arrangements[,]" and averred that Tarkington Racing Engines, Inc. incurred $1500 in costs in tearing down the engine. The trial judge made findings of fact and conclusions of law, in which he found, among other things, that Jackson had left his engine with "Taylor Lastor, Defendant, at Defendant's shop[.]" In addition, the judge concluded that the delivery of the engine created a bailment, Lastor failed to exercise ordinary care of the engine and was negligent, and "Defendant is liable for damages to the engine." Lastor appealed.

6

ISSUE THREE

In issue three, Lastor argues that the evidence was insufficient to pierce the corporate veil and impose liability on Lastor individually. We interpret Lastor's issue as a challenge to the legal sufficiency of the evidence. Because this issue is dispositive, we address it first. *See* Tex. R. App. P. 47.1.

Evidence is legally sufficient to support a factfinder's verdict if the evidence would enable a reasonable and fair-minded factfinder to reach the judgment under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing evidence to determine whether it was sufficient to support the trial court's verdict, we credit evidence that supports the verdict if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *see Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 114 (Tex. App.—Beaumont 2005, pet. denied). We will sustain a legal sufficiency challenge "when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla." *Suberu*, 216 S.W.3d at 793. "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id*. (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)). A defense that the defendant is not liable in the capacity in which he is sued is an affirmative defense, and must be in a

7

pleading that is verified by an affidavit. Tex. R. Civ. P. 93(2). *Smith v. I-30 Business Park, LTD.*, No. 06-10-00074-CV, 2010 WL 5061003, at *2 (Tex. App.—Texarkana Dec. 1, 2010, no pet.) (mem. op.).

An affirmative defense "defeats the plaintiff's claim without regard to the truth of the plaintiff's assertion[s]" and places the burden of proof on the defendant to establish the defense. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156-57 (Tex. 2015). As discussed above, at the original trial, neither party produced formal testimony, but both Jackson (acting *pro se*) and Lastor's counsel argued and made statements regarding factual matters within their personal knowledge. Attorneys' unsworn factual statements and representations can constitute evidence when the opponent to the testimony waives the oath by failing to object under circumstances that clearly indicated each was tendering evidence on the record based on personal knowledge of contested issues. *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005); *Martin v. Jasper Indep. Sch. Dist.*, No. 09-17-00195-CV, 2018 WL 2974490, at *3 (Tex. App.—Beaumont June 14, 2018, pet. denied) (mem. op.).

"A corporation is a separate legal entity from its shareholders, officers, and directors." *Boyo v. Boyo*, 196 S.W.3d 409, 419 (Tex. App.—Beaumont 2006, no pet.). However, in exceptional circumstances, a court may disregard the corporation's separate existence and hold an individual liable for what would

8

otherwise be solely the corporation's obligation. *Id*. Under Texas law, the corporate form may be disregarded if (1) the corporation is the alter ego of its owners or shareholders, (2) the corporation is used for an illegal purpose, or (3) the corporation is used as a sham to perpetrate a fraud. *Fid. & Deposit Co. of Maryland v. Commercial Cas. Consultants, Inc.*, 976 F.2d 272, 274-75 (5th Cir. 1992); *see also* Tex. Bus. Orgs. Code Ann. § 21.223 (West 2012). Because the various theories for piercing the corporate veil are distinct ways of disregarding the corporate form, they are waived if they are not specifically pleaded. *Town Hall Estates-Whitney, Inc. v. Winters*, 220 S.W.3d 71, 86 (Tex. App.—Waco 2007, no pet.).

As discussed above, Jackson sued "Taylor Lastor d/b/a TRE Racing[,]" and Lastor asserted in his sworn answer that he was not liable in the capacity in which he had been sued. At the original trial, both Jackson and Lastor's counsel made factual assertions regarding matters within their personal knowledge, and neither objected to the fact that the other had not been sworn in. Accordingly, we treat the parties' statements as evidence. *See Mathis*, 166 S.W.3d at 745; *Martin*, 2018 WL 2974490, at *3. Lastor's counsel informed the court during the original trial that Lastor had asserted the affirmative defense, and he stated that the business was a corporation called "Tarkington Racing Engines, Inc." In addition, Lastor's counsel stated that the entity was not a d/b/a of Lastor. Near the end of the trial, Lastor's

9

counsel stated that Lastor was relying on the sworn pleading. Furthermore, at the hearing on the motion for new trial, Lastor testified that his business has been incorporated since approximately 2009. Lastor pleaded and provided evidence supporting his affirmative defense of lack of liability in the capacity in which he was sued. Jackson neither pleaded any theories for piercing the corporate veil nor offered evidence regarding such theories at trial. *See Mathis*, 166 S.W.3d at 745; *Martin*, 2018 WL 2974490, at *3; *see also Suberu*, 216 S.W.3d at 793; *City of Keller*, 168 S.W.3d at 827; *Winters*, 220 S.W.3d at 86. The pleadings and evidence were insufficient to support the trial court's judgment against Lastor individually "d/b/a TRE Racing" and the trial court's conclusion of law that Lastor d/b/a TRE Racing is liable to Jackson for damages to the engine. *See Suberu*, 216 S.W.3d at 793; *City of Keller*, 168 S.W.3d at 827. Accordingly, we sustain issue three, reverse the trial court's judgment, and render judgment that Jackson take nothing from Lastor. Because issues one and two would not result in greater relief, we need not address them. Tex. R. App. P. 47.1.

REVERSED AND RENDERED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 20, 2018
Opinion Delivered February 14, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.